IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Kimberly K. Bagnal, | ) | |
| Plaintiff, | ) | Civil No. 2:09-cv-1474-DCN |
| | ) | |
| vs. | ) | |
| | ) | |
| Foremost Insurance Group, | ) | **ORDER AND OPINION** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court on defendant's motion for summary judgment. Plaintiff claims that defendant failed to make a meaningful offer of underinsured motorist (UIM) coverage to the insured, Donald Adams, in 2005. As a result, plaintiff seeks reformation of the insurance policy at issue to include UIM coverage in the amount of the liability coverage limits. As a second argument, plaintiff claims that the policy contains an internal inconsistency regarding liability coverage. Therefore, plaintiff claims that the policy should be construed in favor of the insured and provide liability coverage in the amounts of $200,000 per person/$600,000 per occurrence/$100,000 property damage. Plaintiff also claims that insurance on a second motorcycle insured by Adams should be construed as excess liability coverage up to the limits of the policy. Defendant argues that its offer of UIM coverage satisfies both South Carolina's statutory and judicially-mandated requirements. Defendant also maintains that plaintiff should not be permitted to stack liability coverage because defendant's policy contains a valid anti-stacking clause prohibiting stacking of such coverage. For the reasons set forth below, the court grants defendant's motion for summary judgment.

1

# I. BACKGROUND

In March 2005, Donald Adams submitted an online application for motorcycle insurance through defendant's internet site. According to defendant, Adams selected the coverage limits desired and received an estimated premium via computer response. Adams accepted the offer of insurance and "the policy was incepted on March 11, 2005." Mot. Summ. J. 2. Defendant then mailed hard copies of the insurance application and the offer of optional additional uninsured (UM) and UIM coverage to Adams. Adams completed, signed, and returned the application, but he failed to return an executed offer form. The original application contained incorrect agency information, so duplicate copies of both the application and offer forms were sent to Adams on three different occasions in March, May, and July, 2005. The offer form and signature page of the corrected application were signed by Adams and returned to defendant in August 2005. Pursuant to defendant's internal procedures, the signature pages of the documents were scanned into defendant's computer system. Todd E. Hawley, Direct Account Sales Supervisor for defendant, verified this series of events in an affidavit attached to defendant's motion. Plaintiff apparently disputes whether defendant mailed the complete offer form to Adams on all four occasions, and whether Adams rejected UIM coverage during the online application process; however, plaintiff offers no affidavits by Adams or any other evidentiary support for these assertions.

Defendant's offer of optional additional UM and UIM coverage provided the following explanation of UIM coverage:

> **Underinsured motorist coverage** compensates you, or other persons

insured under your motorcycle insurance policy, for amounts that you may be legally entitled to collect as damages from an owner or operator of an at-fault underinsured motor vehicle. An underinsured motor vehicle is a motor vehicle that is covered by some form of liability insurance, but that liability insurance coverage is not sufficient to fully compensate you for your damages.

Your motorcycle insurance policy does not automatically provide any underinsured motorist coverage. You have, however, a right to buy underinsured motorist coverage in limits up to the limits of liability coverage you will carry under your motorcycle insurance policy. The limits of underinsured motorist coverage, together with the additional premiums you will be charged, are shown upon this Form.

It is important for you to understand that if you reject either one of these coverages upon this Form and if you are involved in an automobile accident, this Form may then be used by your insurance company as evidence against you if it denies your claim for additional uninsured motorist coverage or underinsured motorist coverage.

If you do not complete this Form and return it to your insurance company or to your insurance agent within 30 days from your receipt of this Form, the law requires that additional uninsured motorist coverage and underinsured motorist coverage, at the same limits as the automobile liability insurance which you purchase, must be automatically added on to your motorcycle insurance policy. You will be required to pay an additional premium for each of these two coverages. If you do not pay that additional premium, your motorcycle insurance policy may then be cancelled.

In the future, if you wish to increase or decrease your limits of additional uninsured or underinsured coverage, you must then contact either your insurance agent or your insurance company. You will not be presented with another copy of this Form by your insurance agent or by your insurance company upon renewal of your automobile liability insurance policy. You will not be presented with another copy of this Form by your insurance agent or by your current insurance company when you extend, change, supersede, or replace your automobile liability insurance policy.

Please read this Form carefully. Your insurance agent or your insurance company __must__ answer any questions which you may have. If you have any further questions, you should contact the State of South Carolina Department of Insurance. Its address and telephone number are:

Office of Consumer Services           (803) 737-6180
State of South Carolina Department of Insurance    (800) 768-3467
300 Arbor Lake Drive, Post Office Box 100105    [E-mail address]
Columbia, South Carolina 29202-3105

Mot. Summ. J. Ex. 1. Section III of the offer form titled, "Offer of Underinsured

Motorist Coverage," provides,

> If you wish to purchase Underinsured Motorist Coverage, then specify the limits you desire. These limits cannot exceed your motorcycle insurance liability limits.

| Underinsured Motorist Bodily Injury/ Property Damage Limits | Premium |
|---|---|
| ☐ $ 15,000/30,000/10,000 | + $ 96 |
| ☐ $ 25,000/50,000/10,000 | + 141 |
| ☐ $ 50,000/100,000/10,000 | + 209 |
| ☐ $ 100,000/300,000/10,000 | + 321 |
| ☐ $ 250,000/500,000/10,000 | + 366 |

Mot. Summ. J. Ex. 1. The offer of optional UIM coverage also allows the insured to

select higher UIM motorist property damage limits in the amounts of $10,000, $25,000,

$50,000, $100,000, and $250,000, for additional listed premiums. In addition, the

insured can select bodily injury and property damage coverage in combined single limits

of $300,000 and $500,000, for additional listed premiums. Defendant states that the offer

form provides all of the UIM coverage limits it is authorized to sell in the State of South

Carolina, and plaintiff does not dispute this fact. At the conclusion of Section III, the

form states,

> If you do not wish to purchase Underinsured Motorist Coverage, then specify below:
>
> ☐ I do not wish to purchase Underinsured Motorist Coverage.

4

Mot. Summ. J. Ex. 1.

The executed offer form, signed by Adams on August 1, 2005, shows that Adams selected UM coverage in the amounts of $100,000 per person/$300,000 per occurrence/$50,000 property damage.[1]  Mot. Summ. J. Ex. 5.  The same form shows that Adams checked the box indicating he did not wish to purchase UIM coverage.  The completed and signed insurance application, signed by Adams on August 1, 2005, reflects the limits of UM coverage selected above and contains the following statements regarding UIM coverage:

> UNDERINSURED MOTORISTS BODILY INJURY[]
> Unless rejected, same Limit of Liability as Uninsured Motorists Bodily Injury
>
> UNDERINSURED MOTORISTS PROPERTY DAMAGE[]
> Unless rejected, same Limit of Liability as Uninsured Motorists Property Damage
>
> UNDERINSURED MOTORISTS BODILY INJURY/PROPERTY DAMAGE CSL[]
> Unless rejected, same Limit of Liability as Uninsured Motorists Bodily Injury Property Damage[.]

Mot. Summ. J. Ex. 6.  In addition, the insurance application reflects that Adams purchased liability coverage on a Harley Davidson motorcycle and a Suzuki motorcycle in the amounts of $100,000 per person/$300,000 per occurrence/$50,000 property damage.  At some point between August 2005 and March 2008, it appears that Adams transferred the coverage on the Suzuki motorcycle to a newer Honda motorcycle.

On March 22, 2008, plaintiff was a passenger on the Harley Davidson motorcycle

---

[1]UM coverage is not at issue in this case.

owned and insured by Donald Adams and operated by his wife, Nita Colson. Colson was driving the motorcycle at a high rate of speed and collided with a raised median, resulting in Colson's death and severe injuries to plaintiff. At the time of the collision, defendant insured two motorcycles owned by Adams and his wife—the Harley Davidson and a Honda. The liability limits for each motorcycle were $100,000 per person/$300,000 per occurrence/$50,000 property damage. Defendant provided liability coverage to plaintiff; however, plaintiff claims that the policy limits are insufficient to address her injuries.

On May 11, 2009, plaintiff filed a declaratory judgment action in state court, alleging that defendant failed to make a meaningful offer of UIM coverage to its insured, Donald Adams, when the insurance policy went into effect in 2005. Plaintiff seeks reformation of the insurance policy to include UIM coverage equal to the amount of liability coverage in the policy. As a second argument, plaintiff alleges that the policy of insurance on the Honda motorcycle "constitutes excess liability coverage up to the limits" of the policy at issue. Compl. ¶ 20. Plaintiff also argues that the declarations page and language in the body of the policy contain an internal inconsistency regarding liability coverage, which renders the policy ambiguous. Plaintiff claims that the policy should be construed to provide liability coverage on each motorcycle in the amounts of $200,000 per person/$600,000 per occurrence/$100,000 property damage.

Defendant removed the case to federal court based on diversity jurisdiction under 28 U.S.C. § 1332(a).[2] Defendant asserts that it is entitled to judgment as a matter of law

---

[2]Plaintiff is a citizen and resident of South Carolina, and defendant is incorporated and has its principal place of business in Michigan. The amount in controversy, exclusive of interest and costs, exceeds $75,000.

because its offer of UIM coverage satisfies the requirements of South Carolina Code Annotated § 38-77-350(A) and State Farm Mut. Auto. Ins. Co. v. Wannamaker, 354 S.E.2d 555 (S.C. 1987). Defendant admits that it is not entitled to the conclusive presumption that a meaningful offer was made under § 38-77-350(B). At the time the policy was issued in 2005, that subsection provided for a conclusive presumption "[i]f [the offer] form is properly completed and executed by the named insured." S.C. Code Ann. § 38-77-350(B) (2005).[3] Defendant acknowledges that the applicable case law interpreted the 2005 version of the statute to require that an insured "personally mark the selections" of coverage. Def.'s Mem. 4 (internal citation omitted). Pursuant to Adams's online insurance application selections, defendant provided Adams with an insurance offer form containing computer-generated marks indicating his rejection of UIM coverage.

Defendant maintains that no internal inconsistency exists regarding the liability coverage mentioned on the declarations page and in the body of the policy. Defendant argues that plaintiff is attempting to stack liability coverage, and the policy issued by defendant contains a valid anti-stacking clause prohibiting stacking of liability coverage.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material

---

[3]In 2006, the state legislature amended the law, providing a conclusive presumption that a meaningful offer is made "[i]f [the offer] form is signed by the named insured, *after it has been completed by an insurance producer or a representative of the insurer*." S.C. Code Ann. § 38-77-350(B) (2006) (emphasis added).

fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(C).  When the party moving for summary judgment does not bear the ultimate burden

of persuasion at trial, the burden for summary judgment may be discharged by pointing

out to the court that there is an absence of evidence to support the nonmoving party's

case.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  The nonmovant must then

"make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial."  Id. at 322.

The nonmovant "'may not rest upon the mere allegations or denials of his pleading, but . .

. . must set forth specific facts showing that there is a genuine issue for trial.'"  Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (quoting First Nat'l Bank of Arizona v.

Cities Serv. Co., 391 U.S. 253, 288-89 (1968)).  Evidence should be viewed in the light

most favorable to the nonmoving party and all inferences drawn in its favor.  Anderson,

477 U.S. at 255.  However, a mere "scintilla" of evidence will not preclude summary

judgment.  Id. at 252.

### III.  DISCUSSION

The three issues before the court are: (1) whether defendant made a meaningful

offer of UIM coverage to Donald Adams in 2005; (2) whether an internal inconsistency

exists in the policy such that the policy should be construed as providing coverage in the

amount of $200,000 per person/$600,000 per occurrence/$100,000 property damage for

each motorcycle listed on the policy; and (3) whether the insurance policy on the Honda

motorcycle insured by Adams constitutes excess liability coverage.  The court addresses

each issue, in turn.

## A. Meaningful Offer of UIM Coverage

Pursuant to South Carolina Code Annotated § 38-77-160, insurance carriers are required to

> offer, at the option of the insured, underinsured motorist coverage up to the limits of the insured liability coverage to provide coverage in the event that damages are sustained in excess of the liability limits carried by an at-fault insured or underinsured motorist or in excess of any damages cap or limitation imposed by statute.

"The insurer bears the burden of establishing that it made a meaningful offer." Progressive Cas. Ins. Co. v. Leachman, 608 S.E.2d 569, 571 (S.C. 2005) (citing Butler v. Unisun Ins. Co., 475 S.E.2d 758, 759 (S.C. 1996)). "A noncomplying offer has the legal effect of no offer at all." Id. (citing Hanover Ins. Co. v. Horace Mann Ins. Co., 389 S.E.2d 657, 659 (S.C. 1990)). "'If the insurer fails to comply with its statutory duty to make a meaningful offer to the insured, the policy will be reformed, by operation of law, to include UIM coverage up to the limits of liability insurance carried by the insured.'" Id. (quoting Butler, 475 S.E.2d at 760).

> In general, for an insurer to make a meaningful offer of UIM coverage, (1) the insurer's notification process must be commercially reasonable, whether oral or in writing; (2) the insurer must specify the limits of optional coverage and not merely offer additional coverage in general terms; (3) the insurer must intelligibly advise the insured of the nature of the optional coverage; and (4) the insured must be told that optional coverages are available for an additional premium.

Id. (citing State Farm Mut. Auto Ins. Co. v. Wannamaker, 354 S.E.2d 555, 556 (S.C. 1987)). "The goal, as set forth in Wannamaker, is to provide an insured with adequate information to make an intelligent decision on whether to accept or reject UIM coverage." Id.

"In response to <u>Wannamaker</u>, the legislature passed a statute establishing the requirements for forms used in making offers of optional insurance coverage such as UIM." <u>Leachman</u>, 608 S.E.2d at 571. Section 38-77-350(A) specifies the form to be used when insurance carriers offer optional coverages:

> (A) The director or his designee shall approve a form that automobile insurers shall use in offering optional coverages required to be offered pursuant to law to applicants for automobile insurance policies. This form must be used by insurers for all new applicants. The form, at a minimum, must provide for each optional coverage required to be offered:
>
> > (1) a brief and concise explanation of the coverage;
> >
> > (2) a list of available limits and the range of premiums for the limits;
> >
> > (3) a space to mark whether the insured chooses to accept or reject the coverage and a space to state the limits of coverage the insured desires;
> >
> > (4) a space for the insured to sign the form that acknowledges that the insured has been offered the optional coverages;
> >
> > (5) the mailing address and telephone number of the insurance department that the applicant may contact if the applicant has questions that the insurance agent is unable to answer.

As mentioned above, the 2005 version of § 38-77-350(B) provided the following presumption:

> If [the offer] form is properly completed and executed by the named insured it is conclusively presumed that there was an informed, knowing selection of coverage and neither the insurance company nor any insurance agent has any liability to the named insured or any other insured under the policy for the insured's failure to purchase any optional coverage or higher limits.

In other words, if the insured completed and signed the offer form, the insurer was entitled to a conclusive presumption that it made a meaningful offer of UIM coverage.

Subsection (D) of the statute states that compliance with § 38-77-350 "satisfies the insurer and agent's duty to explain and offer optional coverages and higher limits and no person, including, but not limited to, an insurer and insurance agent is liable in an action for damages on account of the selection or rejection made by the named insured."

The court first analyzes defendant's offer of UIM coverage under the four Wannamaker requirements. The first requires defendant to use a commercially reasonable notification process, orally or in writing, when communicating its offer of UIM to the insured. Defendant mailed hard copies of the insurance application and the offer of optional additional UM and UIM coverage form to the insured, Donald Adams, on four separate occasions in 2005. Adams initially signed and returned a copy of the insurance application via mail in March 2005, and he signed the corrected application and offer forms and returned both signed documents to defendant in August 2005. Plaintiff claims that Adams only received a complete two-page offer form the first time the documents were mailed in March 2005, but plaintiff did not submit an affidavit by Adams or any other evidence in support of this assertion. Thereafter, plaintiff apparently claims that Adams only received the second page of the offer form. Otherwise, the parties do not dispute the fact that Adams signed and returned the application and offer form to defendant. In Atkins v. Horace Mann Ins. Co., the Court of Appeals of South Carolina held that "[t]he use of mail is a reasonable method of communicating with the insured about an important business transaction," and is, therefore, "commercially reasonable." 658 S.E.2d 106, 109 (S.C. Ct. App. 2008) (internal citation omitted). Plaintiff relies on Dewart v. State Farm Mut. Auto. Ins. Co., 370 S.E.2d 915 (S.C. Ct.

App. 1988), and argues that the court of appeals "necessitated additional consideration of the sufficiency of the format and language used to alert the insured to an explanation of coverage." Pl.'s Resp. 9. Dewart discussed this consideration in the context of the third Wannamaker requirement—intelligibly advising the insured of the nature of the optional coverage—not in determining whether the notification was commercially reasonable. Defendant's notification process satisfies the first Wannamaker requirement.

The second Wannamaker requirement is that "the insurer must specify the limits of optional coverage and not merely offer additional coverage in general terms." Leachman, 608 S.E.2d at 517 (internal citation omitted). As shown above, defendant offered five different UIM bodily injury/property damage coverage limits, as well as five additional UIM property damage coverage limits and two UIM combined single limit coverages for bodily injury and property damage. Defendant provided a corresponding premium cost for each coverage limit. The affidavit of Daniel M. Hubbard, State Filings Administrator for defendant, attached to defendant's reply memorandum, reflects that the UIM coverage limits offered above were the only limits the Department of Insurance authorized defendant to sell in March 2005. Pl.'s Reply Ex. A. In Leachman, the South Carolina Supreme Court held that "it is sufficient for an insurer to offer all of the coverage amounts the insurer is authorized to sell by the Department of Insurance, without providing a blank line for insureds to write in any amount of coverage up to the policy limit." 608 S.E.2d at 573. The court continued, "Therefore, we hold that when an insurer offers all amounts of coverage authorized by the Department of Insurance, insurers have provided insureds with the opportunity to make an intelligent decision as to

whether to accept or reject UIM coverage." Id.

Plaintiff argues that there was no place on the insurance application for Adams to select or reject UIM coverage. Plaintiff also alleges that Adams was unable to select or reject UIM coverage online, and that the offer form received via mail contained a "pre-marked box" rejecting UIM coverage. Pl.'s Resp. 11. Plaintiff offers no evidentiary support for these allegations. It is undisputed that defendant sent Adams both the insurance application and the offer form containing the UIM coverages above. It is also undisputed that Adams signed and returned both documents. By listing all authorized UIM coverage limits, and the corresponding premiums for each, in its offer of optional additional UM and UIM coverage form, defendant satisfied the second Wannamaker requirement. By listing the premiums next to each of the UIM coverage limits, defendant also satisfied the fourth Wannamaker requirement by offering the optional coverages for additional premiums.

The third Wannamaker requirement is that the insurer must "intelligibly advise the insured of the nature of the optional coverage." Id. at 571. As quoted above, the first and second pages of defendant's offer of optional additional UM and UIM coverage form provide multiple paragraphs explaining the nature of UIM coverage, as well as the consequences of rejecting UM and/or UIM coverage. On one hand, plaintiff argues that the mailing of the notification letter, insurance application, and offer form were not sufficient to draw Adams's attention to the importance of the documents, and particularly, the offer form. Plaintiff bases her argument on the Dewart case mentioned in the discussion of the first Wannamaker requirement above. Plaintiff also argues that

defendant's notification letter, warning Adams that his motorcycle policy would be cancelled if he failed to execute and return the application and offer form, constituted a "threat" and compelled Adams to sign the offer form which allegedly did not contain an option to purchase UIM coverage. Pl.'s Resp. 11. Defendant's notification letter very clearly indicates the importance of the attached application and offer form. In the body of the brief one-page letter it states:

> Shortly after we processed your policy, you should have received a letter from us with an application and possibly some other forms for you to complete, sign and return for our files. We have not received those documents.
>
> Enclosed are new copies of the application and any other forms. **Please take a few minutes to complete these documents, sign them, and return them to us in the enclosed postage-paid envelope.**
>
> We need to have these documents on file to continue your coverage. If we do not receive them, we will have to cancel your policy.
>
> If you have any questions about these documents or how to complete them, just call us toll-free at . . . .

Mot. Summ. J. Ex. 4. The notification letter states in bold print that Adams should complete, sign, and return the documents to defendant.

Plaintiff correctly points out that the description of UIM coverage in defendant's offer form closely mirrors the same description used by the insurer in Bower v. National General Ins. Co., 569 S.E.2d 313, 316 (S.C. 2002), including the statement, "The limits of underinsured motorist coverage, together with the additional premiums you will be charged, are shown upon this form." In Bower, the South Carolina Supreme Court ruled that the insurer's use of this statement failed "to inform an insured that 'underinsured

14

motorist coverage in any amount up to the insured's liability coverage' is what is actually being offered." Id. (internal citation omitted). As a result, the court found that the insurer failed to make a meaningful offer of UIM coverage. In 2005, however, the same court distinguished Bower and ruled that an insurer makes a meaningful offer of UIM when it presents all of the UIM coverage limits it is authorized to sell by the Department of Insurance. Leachman, 608 S.E.2d at 573. In addition, the court held that insurers were not required to provide "a blank line for insureds to write in any amount of coverage up to the policy limit." Id. The clear explanation of UIM coverage in the offer form, the direct language requiring completion of the application and offer form in the notification letter, and the holding in Leachman lead this court to the conclusion that defendant's offer form satisfies the third Wannamaker requirement. Thus, defendant's offer satisfies all of the Wannamaker requirements for a meaningful offer of UIM coverage.

Defendant's offer of UIM coverage also satisfies the five requirements listed in § 38-77-350(A). As discussed above, defendant's offer form provided a "brief and concise explanation of the coverage," along with "a list of available limits and the range of premiums for the limits." S.C. Code Ann. § 38-77-350(A)(1)-(2). The affidavit of Todd E. Hawley reflects that defendant mailed Donald Adams hard copies of the insurance application and the offer of optional additional UM and UIM coverage form, a two-page document, on four separate occasions in 2005. The documents were mailed in response to Adams's online application and coverage selections. The offer form provides a description of UIM coverage and lists all available UIM coverages defendant is authorized to sell with the corresponding premiums charged for each. Plaintiff alleges,

15

without an affidavit by Adams or any other evidentiary support, that defendant only sent the complete offer form, the entire two-page document, the first time defendant contacted Adams by mail in March 2005. Plaintiff asserts that defendant mailed only the signature page of the offer form, which contains all available coverage limits and premiums, on the other three occasions. Even assuming that plaintiff's assertion is correct, it is undisputed that defendant provided the complete offer form to Adams in March 2005, informing him of both the nature of UIM coverage and the various coverage limits offered by defendant.

Defendant's offer form provides "a space to mark whether the insured chooses to accept or reject the coverage and a space to state the limits of coverage the insured desires." S.C. Code Ann. § 38-77-350(A)(3). The offer form provides check boxes to select the five different UIM bodily injury/property damage limits. The form also provides check boxes to select five additional UIM property damage limits and two combined single limit UIM coverages. The form states that if the insured chooses to reject UIM coverage, the insured should check the box indicating, "I do not wish to purchase Underinsured Motorist Coverage." Mot. Summ. J. Ex. 1. Defendant states that the offer form mailed to Adams contained computer-generated marks based on Adams's online selections of coverage. As a result of these marks, plaintiff argues that the offer form did not provide spaces for Adams to select coverage or to reject coverage. Regardless of the marks, the form provided spaces for the insured to select from the various UIM coverage limits and to reject UIM coverage, if desired. Plaintiff does not assert or offer any evidence showing that Adams in any way attempted to change the marks, or that he was somehow prevented from changing the marks. In addition, plaintiff

admits that Adams completed and signed the acknowledgment located immediately below the offer of UIM coverage. The acknowledgment states that Adams was informed of optional UIM coverage and was aware of his rejection of such coverage.

Defendant's offer form clearly provides a signature line for the insured to acknowledge that he or she has been offered optional UIM coverage. Section IV, "Applicant's Acknowledgment," is immediately below the offer of UIM coverage on page two of defendant's offer form. The acknowledgment states:

> By my signature, I hereby acknowledge that I have read, or have had read to me, the above explanations and offers of additional uninsured motorist coverage and underinsured motorist coverage. I have indicated whether or not I wish to purchase each coverage in the spaces provided. I further understand that the above explanations of these coverages are intended only to be brief descriptions of additional uninsured motorist coverage and underinsured motorist coverage, and that payment of benefits under any of these coverages is subject to both the terms and conditions of my motorcycle insurance policy and to the State of South Carolina.

Mot. Summ. J. Ex. 1. The acknowledgment is followed by lines for the insured's typed or printed name, the insured's signature, the insured's address, and the date of signature. Adams completed all required portions of the acknowledgment and signed his name on August 1, 2005. Mot. Summ. J. Ex. 5.

The fifth and final requirement under § 38-77-350(A) is that the offer form contain the mailing address and telephone number of the Department of Insurance. As quoted above, defendant's form contains this information. Moreover, the form provides an e-mail address for the Department of Insurance.

The court will not consider plaintiff's arguments regarding § 38-77-350(B). Defendant has already conceded it is not entitled to the conclusive presumption of a

17

meaningful offer pursuant to the 2005 version of the statute.  Consideration of subsection

(B) is also irrelevant because the court finds that defendant's offer of UIM coverage was a

meaningful offer under both <u>Wannamaker</u> and § 38-77-350(A).

### B.  Alleged Internal Inconsistency in Liability Coverage

Plaintiff argues that an internal inconsistency exists in the motorcycle liability

coverage issued to Adams, thereby rendering the policy ambiguous.  The "Premium

Summary" section of the declarations page states, "We will insure you for the coverage

for which a premium is shown," and the total premium is shown as $1,054.  Pl.'s Resp.

Ex. 1.  Under the "Vehicle Insurance" section of the declarations page, both of Adams's

motorcycles are identified and listed, and the "Vehicle Insurance Coverages/Limits of

Liability" subsection shows the limits of liability coverage ($100,000 per

person/$300,000 per occurrence/$50,000 property damage).  Pl.'s Resp. Ex. 1.  Also

under this subsection, individual premiums for each motorcycle are listed ($517 for the

Harley Davidson and $537 for the Honda), in addition to the combined total premium of

$1,054.  Pl.'s Resp. Ex. 1.  Plaintiff claims that "Foremost's policy repeatedly indicates

that coverage will be provided in exchange for a premium," and that "it is reasonable to

conclude that payment of two different premiums for the motorcycle indicated that the

total coverage provided under the policy was equal to $200,000 per person and $600,000

per accident."  Pl.'s Resp. 15.  Plaintiff concludes that the policy language is therefore

ambiguous and should be construed in favor of the insured pursuant to <u>Edens v. South</u>

<u>Carolina Farm Bur. Mut. Ins. Co.</u>, 308 S.E.2d 670 (S.C. 1983), and <u>Isle of Palms Pest</u>

<u>Control v. Monticello Ins. Co.</u>, 459 S.E.2d 318 (S.C. Ct. App. 1994).  Plaintiff also cites

18

Illinois state case law in support of its position.

The court finds no ambiguity or internal inconsistency regarding liability coverage on the face of the declarations page or in any other part of the policy provided. The limits of liability coverage are listed as $100,000 per person/$300,000 per occurrence/$50,000 property damage, and the insured is provided with a premium listed for each motorcycle, and a total premium for both motorcycles. Page eight of the policy contains the liability coverage anti-stacking clause, which provides that the limit of liability shown on the declarations page "is the most [defendant] will pay regardless of the number of: 1. "Insureds"; 2. Claims made; 3. Vehicles or premiums shown in the Declarations; or 4. Vehicles involved in the "motorcycle" accident." Pl.'s Resp. Ex. 4. The singular listing of liability coverage amounts on the declarations page combined with the anti-stacking clause leads to only one reasonable conclusion: The total premium on the declarations page is the combined premium for two motorcycles, each of which has liability coverage in the amounts of $100,000 per person/$300,000 per occurrence/$50,000 property damage.

Plaintiff's reliance on <u>Edens</u> and <u>Isle of Palms Pest Control</u> is misplaced. The holding in <u>Edens</u> relied upon by plaintiff is that "[w]here language used in an insurance contract is ambiguous, or where it is capable of two reasonable interpretations, that construction which is most favorable to the insured will be adopted." 308 S.E.2d at 671. In <u>Isle of Palms Pest Control</u>, the South Carolina Supreme Court was faced with a liability insurance policy containing a professional liability exclusion. That exclusion rendered the policy meaningless "because it would exclude coverage for all claims arising

19

from Isle of Palms' exterminating services, the very risk contemplated by the parties."

Isle of Palms Pest Control, 459 S.E.2d at 321. The court held, "The internal

inconsistency created by an exclusion which purports to bar coverage for claims arising

out of the very operation sought to be insured renders the policy ambiguous, and we must

resolve ambiguity in favor of coverage." Id. Neither of the holdings above is applicable

in the case now before the court. The liability coverage in the insurance policy at issue is

unambiguous, and the policy does not contain an exclusion seeking to bar the coverage

sought by Adams.

Plaintiff's reliance on Illinois state law is also without merit. Illinois state law is

irrelevant for two glaring reasons. First, South Carolina Code Annotated § 38-61-10

states:

> All contracts of insurance on property, lives, or interest in this State are
> considered to be  made in the State and all contracts of insurance the
> applications for which are taken within the State are consider to have been
> made within this State and are subject to the laws of this State.

Insurance law in South Carolina is governed by the laws of South Carolina. Second,

plaintiff relies heavily on the holding in Hall v. General Cas. Co. of Illinois, 766 N.E.2d

680 (Ill. App. Ct. 2002), which the Illinois Supreme Court specifically overruled in

Hobbs v. Hartford Ins. Co. of the Midwest, 823 N.E.2d 561 (Ill. 2005).[4]

Plaintiff's only remaining avenue to reach liability coverage in the amounts of

---

[4]In Hall, the Appellate Court of Illinois determined that liability coverage language in
the declarations page was inconsistent with the language of the anti-stacking clause, and
the court held that the inconsistency created an ambiguity which should be resolved in
favor of coverage. 766 N.E.2d at 683. In Hobbs, the Illinois Supreme Court overruled
Hall and held that an anti-stacking clause unambiguously prohibited stacking. 823
N.E.2d at 569-70.

$200,000 per person/$600,000 per occurrence/$100,000 property damage lies in stacking the liability coverage of both motorcycles insured by defendant. Both parties agree that South Carolina law precludes stacking of liability coverage. "Liability coverage . . . is limited to the particular vehicle for which it is purchased. The extent of liability coverage is thus statutorily defined by the amount of coverage on the insured vehicle and does not encompass coverage applicable to other vehicles." Ruppe v. Auto-Owners Ins. Co., 496 S.E.2d 631, 633 (S.C. 1998). The South Carolina Supreme Court also acknowledged the validity of liability coverage anti-stacking clauses such as the one used by defendant in this case. "[A] policy provision prohibiting stacking is consistent with statutory insurance requirements regarding liability coverage." Id.

### C. Alleged Excess Liability Coverage

The final issue before the court is plaintiff's assertion that ownership of the two motorcycles listed in the policy issued by defendant "appears to present a factual issue" and may lead to a finding of excess insurance coverage on one or both of the motorcycles insured by Adams. Plaintiff references the "Other Insurance" section of the insurance policy at issue, located on page eight of the policy:

> If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered motorcycle", shall be excess over any other collectible insurance.

Pl.'s Resp. Ex. 4. Plaintiff claims, "As Nita Colson did not own the Harley, the coverage appears to be excess coverage. Ownership of the Honda appears to provide the primary coverage. If owned by Donald Adams, it also provides excess coverage equal to its pro

21

rata share of the damages."  Pl.'s Resp. 17.

Neither party discusses the applicability of any other liability insurance in this case.  In the policy at issue, the term "you" is defined in the policy as the named insured and the named insured's resident spouse.  Pl.'s Resp. Ex. 2.  Therefore, the last sentence in the "Other Insurance" section of the policy can be read as, "However, any insurance we provide for a vehicle *neither you nor your spouse* own, including any vehicle while used as a temporary substitute for '*your, or your spouses's*, covered motorcycle,' shall be excess over any other collectible insurance."  It is irrelevant whether Adams owned one motorcycle and Colson owned the other.  Since both motorcycles were owned by Adams or Colson, the last sentence in the "Other Insurance" section does not apply.  That section applies to motorcycles not owned by the named insured or the named insured's resident spouse.  No factual issue exists on this point.

## IV.  CONCLUSION

Plaintiff has failed to present any genuine issues of material fact.  For the foregoing reasons, defendant's motion for summary judgment is **GRANTED**.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**CHIEF UNITED STATES DISTRICT JUDGE**

**March 2, 2010**
**Charleston, South Carolina**